All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. Before we get started, Judge Graber and I are very pleased to be joined today by Judge Rice from the District Court in Vermont. Thank you for coming over and helping us out with our caseload. I think she's going to be here for much of the week. And also, before we get started on our argued cases this morning, we have several cases that have been submitted without argument. I'm going to run through those really quickly. And those cases are 20, case number 20-72267, Gonzalez v. Garland, is submitted today without argument. Also, 20-72289, Lopez Morales v. Garland. Also, 20-72315, Hassan Zadeh v. Garland. Also, set 20-73267, Chen v. Garland. 20-73658, Marcado Marsalo v. Garland. And last but not least, 20-73663, Chee v. Garland. So those cases will all be submitted today without argument. Today we have two cases being argued. The first of those cases is Linton-Helms v. Myers. And I believe, Ms. Wilk, you'll be starting us off. So go ahead. Good morning. May it please the Court, my name is Susan Wilk. I'm an attorney with the Federal Public Defender for the District of Oregon, and I represent the petitioner in this matter, Dena Renee Linton-Helms. I would like to reserve three minutes of my time for rebuttal. Counsel, before you get started, it appears from the records of the Bureau of the Prison that your client has been released. And I'd like you to address what effect, if any, that has on the issues before us. Your Honor, we believe that the release of Ms. Linton-Helms under this Court's precedent does not have any impact on this case's ability to proceed, and that's for two reasons. First, she is on post-prison supervision for a period of 36 months. And, of course, the general rule in this circuit is that a case is moot, a habeas petition is moot, if the prisoner completes his or her sentence before the Court addresses the merits of the petition. She still is under sentence, and if this Court were to grant the relief that we seek and remand this matter back to the District Court for determination on the merits, that period of post-prison supervision could be shortened. Regarding the merits of the claims here, the District Court erred in finding that Ms. Linton-Helms did not establish cause and prejudice to overcome the procedural default of her Ground 2 claim, that trial counsel rendered ineffective assistance when he failed to communicate with her regarding a favorable plea offer. The result, of course, was that Ms. Linton-Helms stood trial on more serious charges and received a more onerous sentence. The familiar Martinez standard requires Ms. Linton-Helms to demonstrate that the underlying claim is substantial and that post-conviction counsel was ineffective for failing to raise the issue. That is the prejudice prong. And the key facts for purposes of this Court's analysis are established by the contemporaneous record. And the most significant of those facts is trial counsel's email to the District Attorney in which he stated, and I quote, I believe Linton-Helms will accept the latest offer. He also stated that she had questions about the availability of certain programming and a furlough. And the DA responded to those specific questions and specified the precise terms of the plea offer, which it was anticipated that Ms. Linton-Helms would accept. However, there is no documentary evidence, no evidence from the trial proceedings at all, no letter, no email to the DA, no file note or other record showing that he communicated with her following this latest response from the District Attorney. That's correct, Counsel. I think there's no evidence one way or the other. Isn't it your client's burden, correct? Is this a difficult, for a habeas case, you know, usually there's a thumb on the scale, so to speak, because of EPA or something like that. This case, there is, I guess, a burden. One party has the burden. I think your client has the burden. But there doesn't seem to be anything in the record. The non-documentary evidence, the affidavits, your client says he never told me. My counsel never told me. Counsel says I did. And so what do we do? This is like literally a he said, she said situation. And what do we do with that? It seems to me my only thought is maybe the burden does the work there. So our burden, Your Honor, is to show that the underlying claim is substantial, meaning that it is, it would be debatable among jurists of reason. And I think that there is, to the extent that there is an inconsistency between what my client said and what her lawyer said, we requested an evidentiary hearing to resolve those inconsistencies. The court below really found that we had not met the cause prong. And critically, what the court, I think, left out of its analysis, and which I think is significant as well with regard to what you pose as our burden, is Ms. Linton-Helm's inclusion of the issue in her pro se post-conviction petition when she had not met with counsel, in which she stated that she had received an offer for 66 months and when she asked her lawyer about it, he never got back to her. I'm troubled by Attorney Simcoe kind of abandoning the whole process, not willing to submit an affidavit, and kind of the ambiguity in his response. I think I told her it would be my practice. I would assume a good defense attorney would make some kind of notation, conveyed the offer, this is what she said. And that would certainly be, I think, the expectation here. One would hope that it would be under FRI a minimum obligation of counsel to document that a final offer from a prosecutor was relayed to an accused person and the client's decision regarding the offer was memorialized with a file. We know that did not happen here. And I think as well, in response to Judge Van Dyck's question earlier, Simcoe stated that he believed that he would have relayed the offer. However, he does not say that he has a specific recollection of having done so. He has a general practice and he says, my general practice would have been to relay plea offers. But perhaps in this case, because Simcoe had a perception of what his client's interests were, that we believe is at odds with the actual record. Simcoe never followed up with her. My client, for her part, asserted that communication with Simcoe was a consistent problem. She frequently tried to reach him, would leave messages. In this instance, she left him three messages, spoke at one point to a woman. Can I ask you a question about the hearing? Because there is information in the record because there are various affidavits and such. But I'm trying to figure out what it is that we think would happen if we had a hearing in this case. I'm not sure that we would get, you know, I don't think Simcoe would tell us something different than what he's already said. I don't think your client's going to say anything different than what she's already said. So is it, it seems to me like if we had a hearing, I guess we'd have depositions and we'd have, you know, we'd put them on the stand, I guess. And so then is the hope that Simcoe would break under questioning? I'm trying to figure out what would happen in a hearing that we would get, what information we would get that we don't already have here. Because I think that's what the trial judge, I think, thought. Well, we've already got a record here on it's a he said, she said, and they're pretty firmly established in our position. So what would happen at a hearing? Well, in this case, Simcoe did say significantly different things to me, my investigator, in the presence of his lawyer than he stated in the written affidavit that he later prepared for the state after breaking off communications with us. And the significance is my client, he stated to us that my client wanted to accept the plea offer. Later, he backed away from that. That's the unsigned affidavit where it says petitioner wanted to accept the offer. That's correct. That's correct, Your Honor. That your officer that was prepared for him by your side. Is that right? I'm sorry? That's the unsigned affidavit that was prepared by your side. Is that right? And sent to him for signature. That is correct. And I just wanted to make sure on my time, does that reflect the amount of time that I have remaining or the amount of time that I have remaining for rebuttal? Everything. Everything. I will answer the court's question, and then I'll reserve the remainder of my time for rebuttal. The unsigned affidavit reflects what we heard Simcoe tell us in the presence of his counsel, and we believe that if we were able to confront him and question him about that, that would actually have some value at an evidentiary hearing before the district judge. And thank you, and I'll reserve the remainder of my time for rebuttal. Good morning. May it please the court, Pinesh Jha for the superintendent, asking this court to affirm the district court's judgment. So I'd like to start off, if I could, just to push back a little bit on what I think has been a consistent misunderstanding of the analytical framework that Petitioner has put forward. Petitioner seems to think that substantiality of the claim is enough to be entitled to relief, but I think that ignores this court's precedence in Dietrich and Claiborne and Jurf and Hooper v. Shinn, all of which say that in order to be entitled to relief, Petitioner in this type of claim under Martinez needs to be able to establish both prongs of Strickland as to post-conviction counsel's performance, both prejudice and deficient performance. And those cases hold that the prejudice prong under Strickland is higher than the substantiality standard. So that's really the controlling standard of review here. And I think to some degree that may answer Judge Van Dyke's question about sort of what tools you have to resolve these sort of he said, she said problems, because Your Honor is right that AEDPA doesn't apply to a Martinez claim, but there are sort of two layers of Strickland here. You know, normally under AEDPA you have one layer of deference to a state post-conviction court judge, and then to trial counsel here you have two layers of Strickland deference to counsel. Yes, I'd like to ask you about what has been argued with respect to an evidentiary hearing, because this record to me contains an unusual amount of information suggesting that trial counsel is not being forthcoming. In addition to the things that were mentioned earlier, it's clear from the record that he has a disciplinary history that includes failing to communicate with or misrepresenting things to a client. So why shouldn't we send this back for an evidentiary hearing? Because if, in fact, this offer was not communicated, then it seems to me the standard is met. That's right, Your Honor. I just want to point out that on the disciplinary hearing evidence, that evidence I think was excluded by the district court in its ruling. So I'm not sure that's available for review. But leaving that aside, if there were an evidentiary hearing. If there were an evidentiary hearing, it's possible that that would be relevant to his credibility. Yes, Your Honor, that is a possibility. And so if this Court were to send it back for an evidentiary hearing, then, yes, that would give the district court an opportunity to rule in the first instance as to what happened at the trial level. And perhaps that would be worthwhile, but in our view that is unnecessary because this case first presents a threshold question of what happened at the post-conviction level. And on that issue, again, Petitioner has the burden of showing that post-conviction counsel was deficient under or was ineffective under both prongs of Strickland. And it's her burden. And as the district court pointed out, she's offered no evidence of what happened in her conversations with post-conviction counsel. She offers no evidence that she — that she offers no evidence to exclude the possibility that post-conviction counsel here took a look at all this evidence and concluded that it wasn't worth raising. And if post-conviction counsel made that decision, then this Court has to defer to that under Strickland. And if it's her burden, and as the district court said, her affidavit and her declaration makes no discussion of what happened at the post-conviction level. And that is what the — that was the issue before the district court under Martinez. So I'm trying to figure out, when I looked at the affidavit that was given to Simcoe, I think his name, and then the — and then later Simcoe signed a different affidavit. He didn't sign the one that's provided by Linton-Helms' attorneys. What in your view is the difference between what is said in those affidavits? I — to the best of my — the best I can discern, I think maybe the difference is that in the one that he didn't sign, it is clear that she says that she wanted to accept the offer, whereas in his affidavit, I don't believe he makes that clear. And I think that's — that's important, because even in Ms. Linton-Helms' declaration, as I read — if I — if I read it closely, she doesn't say that she communicated that she was willing to accept the offer to him. I think what she said — Yes, she does. She says, I wanted to accept the offer. Yes, she does. But I also wanted to know whether it included certain programs. Yes, Your Honor. And so I said, if I read it closely, I think that also supports the reading that she was interested in accepting the offer, but perhaps didn't communicate that to counsel because, first, she wanted more information. But didn't Mr. Simcoe send an email to the prosecutor that says, I think she's going to accept the offer? As the district court said, and as I argued in my brief, Your Honor, I don't think that's the only possible reading of that statement. I think particularly when it's in the context of plea negotiations, it doesn't necessarily mean that she is prepared to take the offer, and it's stated in the future tense, I think, which expresses a hope. But that kind of is like the tipping point between her just coming up with something and him having his own facts. This is his email. That's right, Your Honor. And I think that could be an issue for the district court to resolve on remand for an evidentiary hearing on what happened at the trial level. But I repeat that the issue here under Martinez is, first, what happened at the post-conviction level, and Petitioner has a burden of establishing that post-conviction counsel was deficient. And she has not carried a burden of excluding the possibility that post-conviction counsel took a look at this and decided that it wasn't worth raising, which in our view would be reasonable. What about her argument that I think in her pro se petition there was a line about this issue? And so she says, well, my counsel should have picked up on that and made the argument. Right, Your Honor. And so it's our view that when you look at post-conviction counsel, which is the only evidence we have in the record of what happened at the post-conviction level, post-conviction counsel says that these are the sorts of things that I seek out, I think uses the words I seek out, and this is something that I would have investigated. But he also says I have no memory of it, and as Judge Rice pointed out, the papers that he presumably should have or would have looked at included her pro se petition, which raised this issue. Right, Your Honor. And so my point is although he doesn't have a specific memory of this issue, his affidavit. What possible reasonable reason could a post-conviction counsel have for not making an argument in this kind of situation when the post-conviction counsel said, well, if I'd heard about this, I definitely would have raised it. So clearly if it was in front of him and he didn't raise it, he sort of admitted that that's a problem. As I read the affidavit, Your Honor, it doesn't exclude the possibility that consistent with his practice, this post-conviction counsel did investigate this and determined based on all the reasons identified in my brief, which include what trial counsel said happened, determined that this was not a claim worth raising. Yeah, so, you know, that makes me think in order for Linton Helms to prevail here, we kind of have to, because there just really is a he said, she said, so we have to believe that two different counsel, both her trial counsel sort of was told about this and then just dropped the ball and never talked to her for months and then just went to trial. And then also post-conviction counsel also dropped the ball. And, you know, even though and neither didn't see this, notwithstanding the fact the post-conviction counsel says this is the kind of thing I would look for, as opposed to what their stories are, I guess. So we have to accept that two different counsel sort of dropped the ball. Right, which I think is contrary to the presumptions that Strickland requires this court to take. Yeah. And, you know, I think that sort of to the extent that post-conviction counsel was looking at this record and determining whether this was a worthwhile claim to raise, I think ultimately was making a credibility determination of whether the state post-conviction court would have believed her. And I think, you know, in our view, her story lacks some credibility. Well, isn't that what evidentiary hearings are for? And it seems to me that there is some corroboration here of what she says. But, Your Honor, I don't think Martinez allows an evidentiary hearing every time a petitioner can create a he said, because that would be an end-run around AEDPA. There still has to be, I think, what — You're saying that her sworn declaration, even though it is consistent with some of the documentary evidence, isn't enough to create an issue of fact for an evidentiary hearing that she might be telling the truth? If that were the dispositive issue, Your Honor, then yes. But that is not the dispositive issue in our view, because there still remains a question of whether post-conviction counsel was deficient or not. And that is a question — Who says he has no recollection, but he read things in the file that, in his own words, would have caused him to raise the issue, but he didn't. So it means, perhaps, that he didn't read the file. That's a permissible inference, is it not? I don't read his — I don't read post-conviction counsel's declaration as saying, on this record, I would have raised the claim. I read him as saying, I would raise it if the claim were valid, or if the claim seemed colorable to me. And I think that — Well, no, he says, if Petitioner had told me she was unaware of a plea offer or that she had wanted to accept the offer, I would have raised the claim. And so one way that Petitioner — I mean, it's very carefully worded. If she had told me, it sounds like he's waiting for an oral confirmation, but it's in the paperwork. If I can just answer this question with a timer that I don't have. I think, Your Honor, that it seems to me that that requires believing that counsel would raise every claim, no matter what his investigation shows, just based on the say-so of his client. And I'm not sure that that's a reasonable way of reading what counsel was saying. And I don't know if the Court has any further questions. Do you have any further questions? I don't. I don't. Thank you. Thank you. We ask the Court to affirm. Thank you. So, counsel, I'll make sure you have a chance to say. Here's the big concern that I have that I think is teed up by both of your excellent arguments. And that is, I mean, this really is a he said, she said. And it seems to me that most of the time in these circumstances, their attorneys are not going to remember precisely what happened because they have so many clients, et cetera. And we see that both for post-conviction and for trial counsel. And so if we were to rule in your favor and say there needs to be an evidentiary hearing, I'm having a hard time seeing why we aren't just essentially creating a rule that every time there's a he said, she said where the evidence is sort of missing mostly in this case and certainly inconclusive. And I suppose you could add to that that her counsel doesn't have a specific recollection because neither have a specific recollection that we would always have to have a hearing. Is that the rule or why would that not be the rule required if, and I know I just used up all your time, but you can answer that. Thank you, Judge. I believe that in this case, as in all cases, it will turn on the facts. And here we have a factual showing that Ms. Linton-Helms included an issue about the plea in her post-conviction petition. Her attorney at the trial proceedings communicated to the district attorney that his client wanted to accept the offer, which is now a position that the state expressly seeks to distance itself from. So you think, just to be clear, you think what makes the difference is those two actual specific facts in this case, the fact that she had included that in her pro se for the post-conviction part and the e-mail. I'm not sure whether, but you're not saying that will always be the rule, those two facts make the difference in this case for you. Is that your view? In every case, it's going to turn on its facts. And I think this goes back to what Mr. Shaw was arguing, which concerns the deference that he believes the court should show to post-conviction counsel. And he argues essentially that post-conviction counsel made a strategic decision not to include the claim, but in fact the rule is that strategic decisions are only entitled to deference to the extent that they are informed by a reasonable investigation. And here we have no evidence that despite this claim that Mr. Dickey admitted that he would ordinarily include, that he conducted any investigation, obtained e-mails, obtained Mr. Simcoe's file, talked to Mr. Simcoe, talked to the district attorney. Instead, I think the most plausible explanation is that he managed to overlook it. And the claim that he did include was really pretty thin. So the court's left with a record where, in terms of cause, which is deficient performance plus prejudice, prejudice is simply that the claim probably, not more probably than not, probably would have succeeded if raised. In sum, we believe that we have shown a substantial claim and that Ms. Linton-Helms was prejudiced. And if this court is concerned about factual issues, the appropriate remedy is remand for an evidentiary hearing so the case can proceed on the merits. Thank you. Thank you, counsel. Thank you to both counsel for your very helpful arguments.
judges: GRABER, VANDYKE, Reiss